(March 22, 1907.)

## T. O. BOYD et al., Respondents, v. P. S. A. BICKEL et al., Appellants.

[89 Pac. 631.]

VILLAGE GOVERNMENT—CONSTRUCTION OF STATUTE.

1. Where a statute provides that: "Whenever any village containing more than one thousand inhabitants desires to discontinue its organization as a village, and organize as a city of the second class, and a number of the qualified electors of said village equal to three-fifths of the total vote as shown by the last preceding general village election, held in said village, shall petition the board of trustees of such village therefor, . . . . it shall be the duty of said board of village trustees, etc.," and a petition for change of government is filed prior to the holding of any election within the village as designated by the act, it will be a sufficient compliance with the law for the petitioners to show that, as a matter of fact, their petition is signed by a number of qualified electors of the village equal in number to three-fifths of all the electors of the municipality at the time of filing and presenting the petition.

2. The statute in such case is held to be directory only, and where the method designated for ascertaining the number of electors is impossible of application, then the real and vital fact to be ascertained will be discovered by the usual modes of proof.

3. Further, *held,* that the vital and essential fact required by the statute in this case is that the village should contain "more than one thousand inhabitants," and that not less than "three-fifths" of the "electors" of the village shall petition for the change of municipal government.

(Syllabus by the court.)

APPEAL from the District Court of the Fourth Judicial District for Cassia County. Hon. Alfred Budge, Judge of the Fifth District, presiding.

Action to procure a writ of mandate against the board of trustees of the village of Twin Falls. Judgment for plaintiffs and writ ordered issued. Defendants appealed. *Affirmed.*

S. T. Hamilton and W. P. Guthrie, for Appellants, cite no authorities.

M. J. Sweeley and F. H. Eastman, for Respondents.

The method of ascertaining the number of electors in the village, stated in the statute, is directory merely; such construction should be given the statute as will give it effect; the fact of the number of voters, and not the method of ascertaining it, is the controlling feature. A reference to the vote of a stated election is not the only way in which to determine the number of voters, especially where no such election was ever held, and where the legislature has fixed an impossible standard, it is the duty of a court to so construe the law as to accept a substantial compliance. (*Carrigan v. Stillwell,* 99 Me. 434, 59 Atl. 683, 68 L. R. A. 386; *Smythe v. Fiske,* 23 Wall. 374, 23 L. ed. 47; *Holmes v. Paris,* 75 Me. 559; *Landers v. Smith,* 78 Me. 212, 3 Atl. 463; *United States v. Kirby,* 7 Wall. 482, 19 L. ed. 278; *Territory v. Clark,* 2 Okla. 82, 35 Pac. 882; *Cleveland v. Backus,* 133 Ind. 513, 33 N. E. 421, 18 L. R. A. 729; *Lamkin v. Sterling,* 1 Idaho, 92.)

A case squarely in point in principle is that of *Territory v. Whitehall,* 13 Okla. 534, 76 Pac. 148.

In 1898 Congress passed an act authorizing cities having a population of not less than one thousand, "as shown by a school census," to issue bonds. The city of Bridgeport issued bonds without having taken a school census, and the point at issue was whether the population could be determined in any manner other than that prescribed by the act.

The court held the provision directory merely, and sustained the bonds, because it was shown by other evidence that the population of the town in fact was the number fixed by the law.

"The most satisfactory and conclusive test of the question whether or not the provisions of a statute are mandatory or directory, is whether the prescribed mode of action is of the essence of the thing to be accomplished; in other words,

whether it relates to matters material or immaterial, to matters of convenience or of substance." (*Gallup v. Smith,* 59 Conn. 354, 22 Atl. 334, 12 L. R. A. 353.)

AILSHIE, C. J.—This action was instituted for the purpose of securing a writ of mandate against the board of trustees of the village of Twin Falls, commanding them to take the action necessary to convert the village government into that of a city of the second class, under the requirements of the statutes. The inhabitants of the village sought to change their form of government under the provisions of section 1 of an act approved March 9, 1903 (Sess. Laws, 1903, p. 216), which provides as follows: "Whenever any village containing more than one thousand inhabitants desires to discontinue its organization as a village and organize as a city of the second class, and a number of the qualified electors of said village equal to three-fifths of the total vote as shown by the last preceding general village election held in said village shall petition the board of trustees of such village therefor, upon the filing of said petition with the village clerk of said village, it shall be the duty of said board of village trustees to forthwith pass and publish a resolution, in the manner provided for the passage and publication of village ordinances."

The complaint alleges that a petition was presented to the board of trustees on the first day of March, 1906, showing that the village of Twin Falls had a population of more than one thousand inhabitants, and that the petition was signed by a number of electors exceeding three-fifths of all the voters of the village at the time of presenting the petition.

The village organization was perfected after the time provided by law for holding election in 1905, and therefore no village election had ever been held prior to petitioning for a change to city government. It was impossible for the board of trustees or anyone else to determine by the statutory standard that the petition had been signed by a number of electors equal to three-fifths of the total vote as shown

by the last preceding general election held in the village. It was not difficult, however, to ascertain whether the petition was signed by a number of qualified electors equal to three-fifths of all the legal voters within the corporate limits of the village. This was done and the fact was made to clearly appear before the board and is so alleged in the complaint. The board of trustees refused to comply with the request of the petitioners, for the reason that no election had ever been held, and that under the statute they had no means of ascertaining whether the petition was in conformity with law.

These facts were all set forth in the complaint, and defendants, the board of village trustees, demurred to the complaint, and the demurrer was overruled and the defendants elected to stand on the demurrer, and judgment was accordingly entered, directing the writ to issue, and this appeal is from the judgment.

The only question to be determined in this case is whether the statute above quoted is mandatory or only directory, wherein it requires the petition to be signed by "a number of the qualified electors of said village equal to three-fifths of the total vote as shown by the last preceding general village election held in said village." The statute is undoubtedly directory only; the material and essential requirement is that *three-fifths* of the electors shall petition for the change; the fact that an election has or has not been previously held is immaterial, and was evidently not intended by the legislature as essential and decisive. The legislature meant to designate some ready method of ascertaining when a petition has been signed by three-fifths of the electors, and they proposed that it be determined by the vote at last general election. Where that method is impossible, it becomes proper to ascertain the fact by the usual modes of proof, and, of course, since no election has ever been held, the inquiry must necessarily be confined to the time when the petition was presented, which in every respect meets the fullest requirement of the law.

For authority in harmony with the view here expressed, see *Territory v. Whitehall,* 13 Okla. 534, 76 Pac. 148; *Gallup*

*v. Smith*, 59 Conn. 354, 22 Atl. 334, 12 L. R. A. 353; Am.
& Eng. Ency. of Law, 2d ed., 646.

The judgment of the lower court will be affirmed, and it
is so ordered.   Costs awarded to respondents.

Sullivan, J., concurs.